# 98 DTA 143

## TRIBUNAL CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL VI
## CAGUAS/HUMACAO/GUAYAMA
## PANEL II

ORLANDO RODRIGUEZ ZAYAS, ET ALS.
Apelados

v.

COMITE OLIMPICO DE PUERTO RICO
Apelante

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO
Apelante

Núms. KLAN-97-00654/KLAN-97-00743

San Juan, Puerto Rico, a 26 de marzo de 1998

Panel integrado por su Presidente, Juez Ortiz Carrión,
y los Jueces González Rivera y Rivera Pérez

González Rivera, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

El Estado Libre Asociado de Puerto Rico (E.L.A). sometió ante la consideración de este Tribunal un escrito de apelación el 26 de junio de 1997 en la cual solicitó la revisión de una sentencia dictada el 14 de mayo de 1997 por el Tribunal de Primera Instancia sala Superior de Guayama. Por su parte el

Comité Olímpico de Puerto Rico (C.O.P.U.R). presentó el 18 de julio de ese mismo año, otro rocurso de apelación para cuestionar la misma sentencia. Esta les responsabilizó, de forma solidaria, por el pago de bonificación adeudada a unos maestros del Departamento de Educación (D.E) por labor realizada durante el año escolar 1992-93. Mediante resolución del 25 de septiembre de 1997, este Tribunal ordenó la consolidación de ambos recursos, ya que los mismos contienen cuestiones comunes de hecho y de derecho.

El Tribunal recurrido determinó en su sentencia que el C.O.P.U.R. se obligó a efectuar el pago mediante un contrato verbal en la cual ofreció pagar a los demandantes la bonificación, impuso responsabilidad al E.L.A. por haber permitido que los maestros demandantes rindieran sus servicios y además porque se benefició por el trabajo efectuado por éstos. El E.L.A., según concluyó el Tribunal recurrido, no puede reclamar desdoblamiento de su personalidad jurídica para negarse a pagar por unos servicios que se rindieron con su conocimiento o tolerancia.

En apelación el E.L.A y el C.O.P.U.R. imputan al Tribunal error al imponerles la obligación que alegan no haber asumido y al imponerles el pago de las costas, gastos, y honorarios de abogado.

## I

La controversia que nos corresponde dilucidar es ¿a quién le corresponde efectuar el pago por la cantidad de $32,100.00 dólares en concepto de bonificación a los doce (12) maestros del Albergue Olímpico? ¿al C.O.P.U.R o al E.L.A.?

Los hechos esenciales a esta controversia se desprenden de la estipulación formulada por las partes el 27 de junio de 1996. Los demandantes son maestros de la Escuela Técnico Deportiva del Albergue Olímpico. Esta es una especializada del D.E. y se rige por la Carta Circular Núm. 10/92-93 del 27 de noviembre de 1992. Fue organizada en 1989 por la iniciativa de Don Germán Rieckehoff, con la recomendación del C.O.P.U.R., como parte de una visión integral para el desarrollo deportivo de los ciudadanos de Puerto Rico. Su creación respondió a un esfuerzo conjunto del C.O.P.U.R de Puerto Rico, el Recinto de Ciencias Médicas de la Universidad de Puerto Rico, el D.E. y el D.R.D. La misma tiene dos programas; uno académico y otro técnico deportivo. Los maestros de la misma son certificados por el D.E. como Maestros de Educación Física. Además, son especialistas en la rama del deporte que enseñan, ya sea porque lo han practicado, son atletas o entrenadores nacionales.

Los maestros aceptaron sus plazas en la Escuela Técnico Deportiva, porque además de su salario durante el proceso de reclutamiento el C.O.P.U.R. les ofreció una bonificación de trescientos ($300.00) dólares, ya que tenían que rendir labor en horario extendido que comprendía en ocasiones los días sábado y domingo en que hubiera competencias y las noches de la semana en que se requirieran entrenamientos o actividades especiales. La bonificación fue ofrecida por el C.O.P.U.R. quien a su vez redactó los contratos y gestionó para que el D.R.D. pagara durante los años 1989 a 1992, dicha bonificación con fondos del Programa de Masificación del Deporte. Los maestros demandantes no participaron en forma alguna en la redacción de los contratos, ni tenían conocimiento de quién pagaría la bonificación al momento en que se le hizo el ofrecimiento.

Los contratos para el año 1992-1993, para el pago de la bonificación fueron firmados por los maestros y llevados al Secretario del D.R.D. para su firma. Este se negó a firmar los contratos alegando que carecía de facultad legal para pagar la bonificación, por lo tanto, durante el referido año escolar los maestros no cobraron la bonificación que les correspondía a pesar de que rindieron la labor requerida en un horario extendido.

Durante los siguientes años, 1993-94 y 1994-95, los maestros recibieron sus bonificaciones por una aportación de diez mil ($10,000.00) dólares del C.O.P.U.R. y por donaciones obtenidas de la empresa privada.

Para el año 1995-96 la bonificación de los maestros la pagó el D.E. como horario extendido de los maestros.

## II

En la sentencia el Tribunal de Instancia determinó que ambos demandados responden

solidariamente a los demandantes. Al respecto el Código Civil establece en sus Artículos 1090 (31 L.P.R.A. 3101) y 1091 (31 L.P.R.A. 3102) lo siguiente:

*"La concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación, no implica que cada uno de aquéllos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria."* Art. 1090.

*"Si del texto de las obligaciones a que se refiere la sección anterior no resulta otra cosa, el crédito de la deuda se presumirán divididos en tantas partes como acreedores o deudores haya reputándose créditos o deudas distintos unos de otros."* Art. 1091.

En *Arroyo v. Hospital La Concepción,* 130 D.P.R. __ (1992), **92 J.T.S. 66,** resuelto el 5 de junio de 1992 el Tribunal Supremo de Puerto Rico, citando al tratadista Borrell Macía, expuso que *"...el Artículo 1137 del Código Civil [Art. 1090 nuestro, 31 L.P.R.A. 3101] determina que sólo existirá solidaridad en una obligación cuando ésta expresamente lo determina, constituyéndose con el carácter de tal; y añade el 1138 [Art-1091 nuestro, 31 L.P.R.A. 3122], que si del texto de la obligación no resulta otra cosa, el crédito o la deuda se presumirá dividido en partes iguales como acreedores o deudores haya, reputándose créditos o deudas distintos unos de otros".* A Borrell Macía, *Responsabilidades Derivadas de Culpa Extracontractual Civil,* Bosch, Casa Editorial, S.A. Barcelona, 1958, página 318.

En armonía con lo antes indicado, *Campolieto Bielicki v. Anaya Portuondo,* **97 J.T.S. 26,** resuelto el 4 de marzo de 1997 expresó que por regla general la presunción de solidaridad no existe. En las obligaciones pluripersonales, se parte del principio de que el concurso de sujetos se lleva a cabo mancomunadamente y con carácter simple, por lo que la solidaridad constituye entonces la excepción. De tal modo es así que el Art. 1090 del Código Civil establece que sólo habrá solidaridad *"cuando la obligación expresamente lo determine".*

Continúa expresando el Tribunal Supremo que la solidaridad debe derivarse, ya de una expresa convención de las partes, o del mandato legislativo. Lo anterior no obsta, sin embargo, para que se aprecie en la vida moderna una marcha ascendente hacia la solidaridad, que encontró su punto de apoyo en la esfera mercantil y se extiende con trazo firme a las demás esferas del derecho de obligaciones.

Según Vélez Torres, cuando se habla de mancomunidad, se suele entender la existencia de pluralidad de deudores o de acreedores en una misma obligación. De manera que, cuando tal cosa ocurre, es necesario saber cuál es el alcance de la obligación con relación a los diversos deudores o acreedores. Porque puede ocurrir que, conforme a la relación jurídica, el acreedor tenga derecho a pretender de cada deudor, en el caso en que haya más de uno, la integridad de la prestación debida o sólo parte de ella o, desde el punto de vista de la parte pasiva de la relación, que cada deudor, si son varios, tenga la obligación de pagar la integridad de lo adeudado o sólo parte, cuando el acreedor le reclame el pago. La doctrina suele llamar a la primera situación, cuando se puede ir contra cualquiera de los deudores por la totalidad de lo adeudado, mancomunidad solidaria; y la segunda, cuando sólo se puede ir contra cada uno de los deudores por una parte de la prestación, mancomunidad simple o a prorrata. Vélez Torres, José Ramón, *Derecho de Obligaciones, Curso de Derecho Civil,* 2ed. San Juan 1997, págs. 78-79.

Nos dice Vélez Torres, *Ibid,* pág.79, que según Puig Brutau, la concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación sin que conste la solidaridad, produce como efecto que el crédito o la deuda se presumirán divididos en tantas parte iguales como acreedores o deudores existan.

Citando a Albaladejo, Vélez Torres sostiene, que en la mancomunidad activa, es decir, cuando hay más de un acreedor, cada uno sólo puede exigir separadamente su parte de la deuda y en la pasiva, cada deudor sólo puede demandarse para el cumplimiento de lo adeudado en la parte que corresponde.

## III

¿De dónde surge la solidaridad del E.L.A. y del C.O.P.U.R.? ¿Se realizó un pacto expreso al efecto? Veamos.

En los apéndices remitidos no se incluyó todos los contratos suscritos por las partes durante los años anteriores y postorioros al año en controversia. No obstante, se estipuló que todos los contratos suscritos por los demandantes eran idénticos a las tres muestras incluidas los cuales corresponden al maestro Orlando Rodríguez Zayas. Surge de éstos, que una vez firmados por las partes, el D.R.D. se comprometía a pagarle al maestro la cantidad de cuatro dólares con sesenta y dos centavos ($4.62) por hora no pudiendo exceder de trescientos ($300.00) dólares mensuales la paga total.

De la estipulación de los hechos realizada por las partes podemos razonablemente concluir que tanto el E.L.A. como el C.O.P.U.R. se comprometieron con los maestros de la siguiente forma: el personal y el pago de los salarios le correspondía al E.L.A., a través del D.E. El compromiso de pagar una bonificación adicional según la estipulación surge del C.O.P.U.R., a través de sus representantes. Este organismo efectuó las gestiones necesarias para conseguir la bonificación en los años antes y después del año escolar 1992-1993, ya sea con fondos provenientes de la empresa privada, del D.R.D., o de sus propios fondos. Para el año escolar en cuestión las gestiones efectuadas por el C.O.P.U.R. no rindieron frutos pues el Secretario del D.R.D. se negó a firmar los contratos. Por lo que esta agencia no se obligó en dicho año.

De un análisis de la situación de hechos ante nuestra consideración podemos concluir que la obligación de pagar la bonificación a los maestros es una asumida por el C.O.P.U.R. de forma mancomunada. Por lo tanto, el crédito o deuda por ésta contraída con los maestros, debe ser dirigida únicamente contra ella.

El E.L.A. a tráves del D.E., tenía la obligación de realizar el pago de los salarios a los maestros, mientras que el C.O.P.U.R. se obligó al pago de las bonificaciones. En cuanto al D.E. y al D.R.D., vemos que no existe un contrato con el C.O.P.U.R en el cual expresamente se haya pactado la solidaridad en el pago, requisito indispensable para que se le pueda entonces exigir la bonificación de forma íntegra a cualquiera de ellos. En cuanto al D.R.D., para el año escolar en cuestión, no hizo contrato alguno. Por consiguiente en ausencia de un pacto expreso cometió error el Tribunal recurrido al imponer responsabilidad al E.L.A. solidariamente con el C.O.P.U.R.

## IV

Pasemos a considerar el error imputado al Tribunal recurrido el cual impuso la cantidad de $2,000.00 dólares para gastos, costas y honorarios de abogados tanto al E.L.A como al C.O.P.U.R. En lo aquí pertinente la Regla 44.1 (d) de Procedimiento Civil (32 L.P.R.A. Ap III) dispone:

*"44.1. Las Costas y Honorarios de Abogado*

. . . . . . . .

*"(d) Honorarios de Abogado-En caso que cualguier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda que correspondan a tal conducta."*

La imposición de honorarios de abogados e intereses temerarios dependen exclusivamente de la determinación que haga el magistrado respecto a si la parte perdedora o su abogado actuaron o no en forma temeraria o frívola. R. 44.1 (d) y 44.3 (b) de Procedimiento Civil (32 L.P.R.A Ap. III). Una vez el Tribunal determina la temeridad la imposición de honorarios e intereses es obligatoria.

Esta disposición tiene como propósito penalizar a una parte por su obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento. El Tribunal Supremo ha reconocido imponerle honorarios de abogado e intereses a una parte aún en un pleito que presente situaciones noveles. *Pérez Marrero v. Colegio de Cirujanos Dentistas de Puerto Rico,* 131 D.P.R. ___ (1992) **92 J.T.S. 124,** resuelto el 15 de septiembre de 1992.

Al aplicar los anteriores conceptos a los hechos de este caso debemos concluir que la determinación del foro de instancia al imponerle dos mil ($2,000) dólares en concepto de honorarios de abogado al C.O.P.U.R., es a nuestro juicio una correcta.

## V

Por todos los fundamentos antes expuestos, procede que modifiquemos la sentencia apelada a los fines de revocar aquella parte de la misma que impuso responsabilidad y el pago de honorarios de abogado al E.L.A., una vez así modificada se confirma la misma en todos sus extremos en cuanto al C.O.P.U.R. como único deudor de su obligación.

Así lo pronunció y manda el Tribunal y los certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General